UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Joiner Enterprises Transportation | ) | Case No. 10 B 21254 |
| | ) | |
| Debtor | ) | Judge Wedoff |

**FINAL AGREED ~~INTERIM~~ ORDER ALLOWING DEBTOR LIMITED USE OF CASH COLLATERAL AND APPROVING POST-PETITION FACTORING AGREEMENT AND GRANTING POSTPETITION SECURITY INTERESTS**

This cause having come before the court on the Debtor's Motion for Use Cash Collateral and to Obtain Post-Petition Credit ("the Motion"); due and proper notice of the Motion having been given to the parties entitled thereto; and the court being fully advised in the premises:

THE COURT FINDS AS FOLLOWS:

A. On May 10, 2010 (the "Petition Date"), the Debtor filed its voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code in the Northern District of Illinois.

B. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

C. The Debtor is an Illinois corporation. The Debtor has continued in possession of its assets and operates its business as a debtor in possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code. No trustee or creditors' committee has been appointed in this case.

D.    Due and proper notice of the Motion has been given pursuant to the requirements of Code §§ 102, 363 and 364 and Rule 4001. The parties have reached an agreement with respect to the matters raised in the Motion, including the entry of an order approving the Debtor's limited use of cash collateral, authorizing postpetition financing and providing adequate protection to United Capital Funding Corp in order to avoid immediate and irreparable harm to the Debtor's chapter 11 estate.

THE DEBTOR ADMITS, STIPULATES, AND AGREES THAT:

E.    The Debtor and United Capital Funding Corp. ("United" or "Secured Party") are parties to the Factoring and Security Agreement dated on or about April 5, 2007 Amended on or about May 13, 2008 and September 15, 2009 (the "Pre-Petition Agreement or the Agreement"), a copy of which is an exhibit to Motion, pursuant to which the Debtor sold its accounts to Secured Party and agreed to grant Secured Party a lien on its assets. A UCC-1 was filed by United with the Illinois Secretary of State on April 9, 2007 as Document No. 011982778

F.    The Pre-Petition Agreement provides for the Debtor to assign certain accounts receivable to the Secured Party with the Secured Party advancing 80% less fees on approved purchased accounts (the "Factored Accounts") as further described in the Pre-Petition Agreement.

F.    As of the Petition Date, the Debtor was indebted to the Secured Party in the amount of at least $249,337.91, which is secured by the collateral described in the Pre-Petition Agreement.

G. The Debtor intends to continue to assign its accounts to Secured Party under the Pre-Petition Agreement and Secured Party has agreed to continue purchasing accounts from the Debtor pursuant to the terms of the Pre-petition Agreements and this Order.

H. The Debtor, notwithstanding its efforts to do so, is unable to obtain unsecured credit allowable under 11 U.S.C. Section 503(b)(1) as an administrative expense, or other than pursuant to 11 U.S.C. Section 364(c)(2) and (3), and the Debtor is unable to obtain credit on terms equal to or more favorable than those proposed by Secured Party. The Debtor requires funds for operating and other expenses including payroll, rent, utilities, insurance, fuel, office supplies and other operating expenses, as well as applicable taxes. The terms upon which the Debtor will be authorized to utilize cash advances are fair under the circumstances.

I. Secured Party has agreed to continue purchasing accounts from the Debtor in accordance with the Pre-Petition Agreement in good faith, within the meaning of 11 U.S.C. Section 364(e), and all interested parties were either notified of the Motion, as evidenced by the certificate of service, or were present at this Court's hearing on the Motion.

J. The Pre-Petition Agreement with Secured Party provides a vital source of working capital for the Debtor, is in the best interests of the Debtor and its estate, and is necessary to avoid immediate and irreparable harm. Good cause exists for approval of the Debtor's agreement for continued financing by Secured Party under the terms of the Pre-Petition Agreement and this Order. The entry of this Order will minimize disruption of the Debtor as a "going concern" and is in the best interest of the Debtor, its creditors, and the Chapter 11 estate.

ORDER

Based on the foregoing findings, agreements and stipulations it is now therefore ORDERED as follows:

1. All capitalized terms used in this Order, not otherwise defined herein and unless otherwise indicated, shall have the meaning given them in the Pre-Petition Agreements which are attached as an Exhibit to the Motion.

2. The Debtor is authorized, effective immediately, to sell and assign its accounts to the Secured Party pursuant to Bankruptcy Code Section 363, subject to the terms of the Pre-Petition Agreement, and to execute all documents and take all actions to be executed and taken in connection with and in furtherance of all undertakings and obligations thereunder.

3. The Debtor is authorized to ratify the Pre-Petition Agreement.

4. The Debtor is authorized, pursuant to Section 363(c)(2)(A) of the Bankruptcy Code, to use the Cash Collateral of United as detailed on the budget attached as an Exhibit to the Motion to the extent and on the conditions set forth herein and in accordance with the Agreements; provided, however, that any payment of pre-petition debt without prior court approval and the consent of United is not authorized by this Order; and provided further that nothing in this order is intended to change the relationship between the Debtor as Seller and United as Purchaser with regard to the accounts receivable which the Debtor has sold pre-petition or will sell post-petition to United pursuant to the Agreements.

5. The Debtor is authorized and empowered to incur secured indebtedness to Secured Party pursuant to this Order and the Agreements in such amounts as needed in the ordinary course of its business as detailed on the budget attached as an Exhibit to the Motion and

not for any purpose prohibited by law. Debtor's use of the proceeds of such indebtedness shall not affect the rights of Secured Party hereunder. In addition, nothing in this Order changes the relationship between the Debtor as Seller and Secured Party as Purchaser with regard to the accounts receivable which the Debtor has sold to Secured Party before the Petition Date and will sell to Secured Party after the Petition Date pursuant to this Order.

6. ~~United's security interests and liens in the Collateral constitute valid, enforceable, perfected, non-avoidable first priority liens and security interests.~~ As adequate protection for its interest in the Collateral, United is by this Order granted a replacement lien, which shall be senior and first-priority lien, under Code § 361(2) 363 and 364, on all assets of the Debtor existing either before or after entry of this Order that shall have the same validity, extent and priority as the liens held by United on the day before this case was commenced.. This replacement lien is immediately valid, enforceable, and fully perfected without the need of any further filing, recordation or other action.

7. For administrative convenience, Secured Party may record the pre-petition transactions and the post-petition transactions arising under the Agreements in one account, and apply payments on a "first in, first out" basis.

8. Secured Party shall be the owner of Accounts purchased under the Agreements and the purchased Accounts and all proceeds therefrom shall be the sole property of Secured Party, and will not, when purchased by Secured Party, constitute property of the estate, and shall be free and clear of any claims, except to the extent that the Debtor has rights in the reserve or such Factored Accounts are subsequently returned to the Debtor.

9. ~~Nothing in Agreement, or in any of the documents executed in connection therewith or this Order, shall give the Debtor authority to require Secured Party to purchase accounts from the Debtor, such being in the sole discretion of Secured Party.~~

10. Secured Party is hereby afforded the protection of Section 364(e) of the Bankruptcy Code with regard to the reversal or modification on appeal of this Order, or to the modification, vacating, or other amendment of this Order by this Court.

11. The Debtor is authorized to take all actions necessary to comply with all provisions of the Agreement.

12. To the extent that any provision of the Agreement shall cause the Debtor to be in default thereunder solely as a result of it being subject to the Bankruptcy Code or it being insolvent, said provisions are waived by Secured Party.

13. Consistent with the Agreement, the Debtor shall not grant to any party any interest in the Collateral or priority in payment prior to or equal with the lien or priority in payment hereby being accorded to Secured Party.

14. The entry of this Order and execution, delivery, and performance under the Agreement, or under any other documents executed in connection therewith, do not constitute a compromise, waiver, or other relinquishment of any right of Secured Party at law, in equity or otherwise, except as provided for herein, including, but not limited to, any right of Secured Party to request and to obtain relief under the Bankruptcy Code.

15. The automatic stay provisions of 11 U.S.C. Section 362 are modified to the limited extent herein to enable Secured Party to implement the provisions of this Order and otherwise thereby to permit Secured Party to demand and receive collections on account of the Factored Accounts, and to apply those collections to the indebtedness.

Case 10-21254   Doc 16   Filed 06/02/10   Entered 06/03/10 07:56:36   Desc Main
Document      Page 7 of 9

~~16.     The Debtor may use proceeds of accounts that are not purchased by Secured Party pursuant to the Agreements and this Order.~~ However, consistent with the Agreements and this Order, to the extent any proceeds of Factored Accounts are in the possession of the Debtor, the Debtor shall immediately pay same to Secured Party; and any proceeds of Factored Accounts hereafter coming into the Debtor's possession shall be paid to Secured Party immediately upon the Debtor's receipt. The authorization of the Debtor to use cash collateral is specifically limited by the provision herein that prohibits the Debtor's use of proceeds of Factored Accounts until said proceeds have been returned to the Debtor from the reserve account.

~~17.     The Debtor will not seek to surcharge the Secured Party or its collateral with any expenses of the type described in Section 506(c) or 552(b) of the Bankruptcy Code unless it obtained Secured Party's prior written consent to the incurrence of such expenses.~~

18.     An event of default under this Order ("Default") shall include the following:

    a.     the Debtor's failure to perform or comply with any of the terms, conditions, or covenants of this Order;

    b.     The Debtor's failure to perform or comply with any of the terms, conditions, or covenants of the Pre-Petition Agreement;

    c.     The termination of this Order by its own terms, operation of law or court order

    d.     The appointment of a trustee under the Bankruptcy Code;

    e.     The conversion of the Bankruptcy Case to a case under another chapter of the Bankruptcy Code;

19.     Upon the occurrence of a Default, Secured Party shall provide the Debtor written notice of such Default to the Debtor and counsel for the Debtor. If the Default is a type that is

not curable, or is curable by the Debtor and the Debtor fails to cure the Default within 48 hours from the time of service of such notice of the Default:

  a. the Debtor shall no longer use any Cash Collateral;

  b. the Debtor shall hold and segregate all Cash Collateral in trust for Secured Party.

20. Notwithstanding anything to the contrary contained herein, the Debtor may not use proceeds of any advance from Secured Party, (a) in connection with the investigation, assertion, commencement, or continuation of any action or claim against Secured Party or (b) to object to or contest, or raise any defenses to the validity, perfection, priority, or enforceability of any rights or claims of the Secured Party.

21. This Order is without prejudice to Secured Party's rights to pursue any and all rights and remedies under the Bankruptcy Code, the Agreement, and any other applicable agreement or law, including without limitation to seek relief from the automatic stay and/or to seek adequate protection with respect to matters not covered by this Order, to seek an injunction, and/or to object to applications for allowance and/or payment of compensation of professionals employed by the Debtor or its estate.

22. The post-petition obligations and indebtedness owed under the Agreement will constitute valid and enforceable obligations of the Debtor and its estate, in accordance with their terms; and the liens and security interests in favor of Secured Party with respect to the Collateral are valid, enforceable, perfected, and unavoidable under the Bankruptcy Code, including Section 552, and any other applicable law.

Enter:

United States Bankruptcy Judge

2 JUN 2010

AGREED TO IN SUBSTANCE AND FORM

JOINER ENTERPRISES TRANSPORTATION

By: Karen J. Porter

UNITED CAPITAL FUNDING

By: Chris Youmans, President